IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

THOMAS RAY WHITE,

     Movant,

v.                             Case No. 2:04-cv-00026
                                  (Case No. 2:02-cr-00244)

UNITED STATES OF AMERICA,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

By Standing Order, this matter was referred to the undersigned United States Magistrate Judge to make proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence, pursuant to 28 U.S.C. § 2255, filed on January 12, 2004 (docket sheet document # 102).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 30, 2002, a federal grand jury sitting in Charleston, West Virginia returned a three-count indictment against Movant, Thomas Ray White (hereinafter "Defendant"), and his cousin, Gary White, Jr.  (# 13).  Count One of the indictment charged Defendant and Gary White, Jr. with conspiracy to commit arson in violation of 18 U.S.C. § 844(n).  Counts Two and Three of the indictment charged Defendant with aiding and abetting his cousin in the arson of property used in interstate commerce and in activities

affecting interstate commerce, in violation of 18 U.S.C. § 844(i).
The properties involved were a travel-trailer that was being used
as a mobile command center by local authorities (the so-called
"FEMA trailer")(Count Two) and the Stevens Funeral Home (Count
Three), both of which were burned during the early morning hours of
September 24, 2002.

On December 6, 2002, Defendant filed various pre-trial
motions, including a motion to dismiss Count Two of the indictment
on the grounds that the FEMA trailer did not constitute property
used in interstate commerce. (# 27). The motion did not address
whether or not the government could prove that Defendant conspired
to commit arson of the FEMA trailer.

The United States responded to the motion to dismiss, arguing
that the motion challenged the sufficiency of the evidence and was
premature. (# 34). A hearing was conducted on this issue on
December 12, 2002, and additional briefing took place thereafter.
(## 38, 40). On December 31, 2002, the court denied Defendant's
motion to dismiss without prejudice, finding that the government
had proffered sufficient evidence of the FEMA trailer's interstate
commerce connection. (# 43).

On December 23, 2002, Gary White, Jr. pled guilty to the
conspiracy count (Count One) of the indictment. (See United States
v. White, 2:02-cr-00243, # 20). At his plea hearing, Gary White,
Jr. denied that Defendant was involved in the funeral home fire.

2

(# 102, Ex. A-1 and A-2).  Subsequently, in contravention of his plea agreement, Gary White, Jr. refused to testify at Defendant's trial.

Defendant went to trial on all three counts in the indictment on January 8, 2003.  The government's principal witness was Defendant's girlfriend, Elsie Keiffer.[1]  During the time in question, Defendant was living in Madison with Ms. Keiffer and their three children in a trailer located near the funeral home and the FEMA trailer.  Gary White, Jr. and his father, Gary White, Sr., were also staying with them.

Ms. Keiffer testified that she was awakened on the night of the fires by Defendant and Gary White, Jr., who told her about a residential fire on Second Street.  (# 77 at 136).  That fire is not part of the subject indictment.  Ms. Keiffer testified that she and Gary White, Jr. went to see the fire on Second Street. Defendant did not go with them.  (Id. at 136-138).

Ms. Keiffer stated that, upon their return to the trailer, she and Gary White, Jr. watched television in the living room with Defendant.  Ms. Keiffer said she heard Defendant and Gary White, Jr. discuss plans to break into the FEMA trailer to steal stuff, and that they also discussed burning the steps of the funeral home in order to get even with the funeral director, who had supposedly

---

[1]  This witness's name is also spelled "Keffer" in the record. The undersigned, however, will use this spelling, as referenced in the trial transcript.

mishandled the funeral of their relative. (Id. at 138-141).
Sometime prior to the fires, one of Defendant's cousins was killed
in a car accident. According to witnesses, the Whites believed
that a police officer had run the girl off the road. (Id. at 108,
120). The girl's funeral was handled by the Stevens Funeral Home.

Ms. Keiffer further testified that she witnessed Defendant
siphon gasoline out of a lawnmower, saw Gary White, Jr. with a
lighter, and then saw Defendant and Gary White, Jr. set fire to the
steps of the funeral home. (Id. at 141-144).

Ms. Keiffer further stated that, upon returning to the
trailer, Defendant and Gary White, Jr. changed their clothes. (Id.
at 145). Ms. Keiffer stated that she did not talk to Defendant
about what had occurred that night. (Id.) The following day,
investigators came to the trailer. Ms. Keiffer granted them access
to seize the clothing worn by both men on the previous night. (Id.
at 145-148).

The United States also called as witnesses two of Defendant's
neighbors. Terry Stone testified that, following the death of
Defendant's cousin, he overheard Defendant tell someone, on the
telephone, that "he didn't think that it was right that the son of
a bitch had got away with what they done" and that "there will be
hell to pay." (Id. at 108). Stone further testified that
Defendant told him he "went in to [the funeral home] to see his
cousin and she was tore all to pieces and that he thought that they

4

could have done a better job and stuff than they done with her."
(Id. at 110-11). Charlotte Webb testified:

> His cousin got killed in a car and it was told that a cop
> bumped her off the road, and I heard him say that there'd
> be hell to pay, that the Whites would make sure they all
> made it right, that there'd be hell to pay.

(Id. at 120). The United States also called the fire investigators
and local law enforcement personnel who were on the scene at both
fires, as well as several witnesses who testified about the
interstate commerce connection to each property. (Id. at 179-225;
# 78 at 230-353).

At the close of the government's case, Defendant moved for a
judgment of acquittal as to the entire indictment. (# 74 at 2).
The presiding District Judge found that there was "no evidence that
Defendant entered into an agreement with Gary White to commit arson
of the trailer." (Id. at 11). Accordingly, the Court dismissed
Count Two (aiding and abetting concerning the arson of the FEMA
trailer), and ordered stricken from Count One (the conspiracy
count) language concerning the burning of the FEMA trailer. (Id.
at 10, 11 and 15).

Defendant testified on his own behalf. Defendant stated that
he had been drinking beer and that he took approximately 10 Xanax
pills on the night of the fires. Defendant further stated that the
combination of alcohol and drugs caused him to have memory loss.
(# 74 at 18). Defendant specifically denied that he had gone with
his cousin to the funeral home. (Id. at 22). He further denied

5

that he siphoned the gasoline out of the lawnmower. (Id.)  When asked if he helped Gary White, Jr. set fire to the steps of the funeral home, however, Defendant stated "I have no recollections of that."  (Id. at 22, 28).  Ultimately, Defendant contended that Elsie Keiffer's account of the events was untrue. (Id. at 29, 31). Defendant called no other witnesses at trial.

On January 10, 2003, the jury returned a guilty verdict against Defendant on Counts One and Three. (# 60).  On January 21, 2003, Defendant filed a Motion for a New Trial (# 71) contending, inter alia, that the admission of evidence involving the arson of the FEMA trailer had unduly prejudiced his defense with regard to the remaining charges.  The District Court denied the Motion for a New Trial. (# 76; # 80 at 423-426).

Defendant's sentencing took place on March 13, 2003. According to the Presentence Report prepared by the United States Probation Department, Defendant's base offense level was determined to be 24, pursuant to USSG § 2K1.4.  The Court imposed a two-level enhancement for obstruction of justice, based upon the Court's finding that Defendant testified falsely at trial, which resulted in a total offense level of 26.  Defendant's Criminal History Category was III, which resulted in a Guideline imprisonment range of 78-97 months.

The Court imposed a sentence of 78 months on each count, with the sentences to run concurrently.  Defendant was also sentenced to

a term of supervised release of three years, and was ordered to pay a $100 special assessment and $1,300 in restitution. (See Judgment in a Criminal Case, # 81).

Defendant pursued an unsuccessful appeal of his conviction and sentence to the United States Court of Appeals for the Fourth Circuit, raising the following claims: that it was error (1) to deny Defendant's pre-trial motion to dismiss Count Two of the indictment, (2) to deny Defendant's post-trial motion for a new trial, and (3) to impose the two-level enhancement for obstruction of justice. The Fourth Circuit affirmed Defendant's conviction and sentence on September 12, 2003. See United States v. White, No. 03-4289 (4th Cir., Sept. 12, 2003)(unpublished).

On January 12, 2004, Defendant filed the instant Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 (# 102), contending that his trial counsel, John H. Tinney, Jr., provided ineffective assistance of counsel, in violation of Defendant's Sixth Amendment rights. Specifically, Defendant asserts that Mr. Tinney failed to pursue a defense based upon voluntary intoxication or to seek appropriate jury instructions with regard to the inability to form specific intent based upon voluntary intoxication. (# 102 at 4-9). Defendant also contends that Mr. Tinney was ineffective in failing to call Gary White, Jr. as a defense witness, inasmuch as he had exculpated Defendant in his plea colloquy. (Id. at 9-11). Finally, Defendant argues that the cumulative effect of these

7

errors, along with the "retroactive misjoinder" of multiple counts undermined the fundamental fairness of the trial.  (Id. at 11-14).

Pursuant to the undersigned's order, on February 19, 2004, the United States filed a Response to Defendant's section 2255 motion, contending that Defendant is entitled to no relief on his claims. (# 106).  On March 17, 2004, Defendant filed a Reply/Traverse to the United States' Response.  (# 107).  The matter is ripe for determination.

## ANALYSIS

### A.   Ineffective Assistance of Counsel Claims.

In Strickland v. Washington, 466 U.S. 688 (1984), the United States Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.  The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. Id. at 687-91.  There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

In order to meet the first prong, Defendant:

must identify the acts or omissions of counsel that are
alleged not to have been the result of reasonable
professional judgment.  The court must then determine
whether, in light of all the circumstances, the
identified acts or omissions were outside the wide range
of professionally competent assistance . . . [C]ounsel is

8

strongly presumed to have rendered adequate assistance
and made all significant decisions in the exercise of
reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to
undermine confidence in the outcome." 466 U.S. at 694.

The court may determine the prejudice prong prior to
considering the competency prong if it is easier to dispose of the
claim on the ground of lack of prejudice. 466 U.S. 697. Using
this standard, and based upon all of the evidence of record, the
court will address the merit of each of Defendant's allegations
concerning ineffective assistance of counsel.

### 1. Intoxication defense and instruction

Defendant claims that his counsel was ineffective by failing
to pursue an intoxication defense at trial. The evidence at trial
established that, on the night of the fires, Defendant and Gary
White, Jr. had been drinking beer and taking Xanax pills earlier in
the evening. Defendant testified that he, Gary White, Jr. and Gary
White, Sr. drank "close to a case and an 18-pack" and that they did
"probably about 10 [Xanax pills] apiece, a little bit more." (# 74
at 18). Defendant stated that the combination of alcohol and drugs
caused him memory loss. (Id.) Defendant testified that he had "no

9

recollections" of helping Gary White, Jr. set fire to the funeral home steps. (Id. at 22, 28). Thus, Defendant contends that his attorney should have argued that Defendant's level of intoxication on the night of the fire left Defendant unable to form the specific intent to commit arson. In conjunction with the intoxication defense, Defendant asserts that his counsel should have called an expert witness to "testify about the effects of consuming a large amount of alcohol and ten Xanax pills." (# 102 at 8).

However, Defendant's testimony indicated that he had a good memory of the events prior to the fire at the funeral home, and that he distinctly remembered getting home at 2:45 a.m. (Id. at 19-20). Defendant specifically denied leaving the trailer after that time, and denied siphoning gasoline out of the lawnmower. (Id. at 21-22). Thus, the defense presented by Defendant at trial was that he was actually innocent of the crime, and that Ms. Keiffer's testimony was untrue.

Respondent contends that the decision to pursue a defense based upon actual innocence, rather than voluntary intoxication, was a matter of trial strategy, and that tactical decisions cannot constitute ineffective assistance of counsel. Stamper v. Muncie, 984 F.2d 170 (4th Cir. 1991); Reid v. True, 349 F.2d 788 (4th Cir. 2003). Respondent further contends that it would have been inconsistent for Defendant to argue an intoxication defense. (# 106 at 6-9). Respondent also asserts that Defendant has not offered

10

any support for his claim that arson is a specific intent crime to which an intoxication defense could apply.  (Id. at 8).

In his Reply, Defendant contends that his counsel did not reasonably investigate the intoxication issue, in violation of Wiggins v. Smith, 123 S. Ct. 2527, 2535 (2003)("Strategic choices made after less than complete investigation are reasonable" only to the extent that "reasonable professional judgments support the limitation on investigation").  Defendant further contends that arson in violation of 18 U.S.C. § 844(i) is a specific intent crime.  Defendant cites United States v. Gullett, in which the court instructed the jury that:

> Of course, the defendant must have acted maliciously and with specific intent, and the government must prove all of the essential elements of the offense beyond a reasonable doubt in order for you to find the defendant guilty.

75 F.3d 941, 948 (4th Cir. 1996).

The essential elements that the United States had to prove in order to convict Defendant of a violation of 18 U.S.C. § 844(i) were that Defendant: "(1) maliciously; (2) damaged or destroyed a building, vehicle or other real or personal property; (3) by means of fire or explosive; and (4) the building, vehicle, or personal or real property was used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce."  Gullett, 75 F.3d at 947 (citations omitted).  The Court recited these elements in the jury instructions.  (# 78 at 391).

11

As discussed in <u>Gullett</u>, "[b]ecause Congress did not define 'maliciously' in section 844(i), we must presume Congress intended to employ the common-law definition unless there are 'grounds for inferring any affirmative instruction from Congress' to define it otherwise." <u>Id.</u>  "[A]t common law, one acted 'maliciously' if he or she acted intentionally or with willful disregard of the likelihood that damage or injury would result." <u>Id.</u>  The Court used this definition in the jury charge.  (# 78 at 392).  Thus, arson requires proof that a defendant acted intentionally.

The Court instructed the jury as follows:

> Ladies and gentlemen, the crimes charged in the indictment in this case require proof of specific intent before the defendant can be convicted of that particular offense or that particular count.  Specific intent, as the term implies, means more than the general intent to commit the act.  To establish specific intent, the government must prove beyond a reasonable doubt that the defendant knowingly did an act which the law forbids, purposely intending to violate the law.  That is not to say, however, that the defendant must have known he was violating a particular statute, but only that the defendant knew that he was violating the law in general when he acted . . . . Specific intent itself may be determined from all the facts and circumstances surrounding the case.

(<u>Id.</u> at 395).

Defendant's testimony at trial indicates that he had a clear memory of the events of that evening, and the record simply does not support a finding of gross intoxication.  Accordingly, Defendant's own testimony undermines his contention that he could not form the specific intent to commit arson.  Likewise, Defendant

12

has not offered any evidence to support his assertion that, had his counsel called an expert witness to testify on the issue of intoxication, that the outcome of his trial would have been different.

The undersigned proposes that the presiding District Judge **FIND** that the failure of Defendant's counsel to investigate and argue an intoxication defense, the failure to call an expert witness on the issue of intoxication, and the failure to proffer an instruction on intoxication, did not fall below an objective standard of reasonableness. Accordingly, Defendant's claim of ineffective assistance of counsel on this basis lacks merit.

## 2. <u>Failure to call Gary White as witness</u>

Defendant further claims that his counsel was ineffective because he failed to call Defendant's cousin, Gary White, Jr. (hereinafter "Gary White" or "Gary"), as a defense witness. Gary White gave two out of court statements in which he indicated that Defendant was not involved in the funeral home fire. First, during a preliminary and detention hearing conducted in Defendant's case, Special Agent Paul Cross, with the Bureau of Alcohol, Tobacco and Firearms ("ATF"), testified as follows about a statement he took from Gary White:

> Q.   What was the sum and substance of his statement to
>      you?
>
> A.   His statement to me was that he -- he said the
>      funeral home fire, he and Thomas, after they came
>      back from setting the other fire that he was, they

13

were in Thomas's trailer drinking beer and popping Xanax pills I think is what he was saying, Xanax. And Thomas went to bed, and he went outside and walked over by the funeral home and decided to set the funeral home on fire.

So, he turned over the lawnmower, lit it off with a lighter, and took the Nerf ball up on the deck. And he said he lit it off when he came back down and then went back in the trailer.

Q.   All right.  Did he, did he implicate Thomas White in the funeral home fire?

A.   No, he did not.

Q.   All right.  Did he implicate Thomas White in assisting him with the camper fire?

A.   Yes, he did.

Q.   And specifically what did he say that Thomas did to assist?

A.   He said that they talked about going to the trailer that evening, and when they got to the trailer, Thomas actually handed him the rock to break the window.  And after he got -- then he, Thomas helped him into the window of the trailer and Thomas handed him a Bic lighter when he got inside.  And then he lit it on fire and then they both, they came out and they took off.

(# 18 at 14-15).  Thus, while Gary's statement exculpated Defendant from the funeral home fire, it implicated Defendant in the FEMA trailer fire.

Gary White pled guilty to the conspiracy as stated in Count One of the indictment.  During his plea hearing, Gary again stated that Defendant had no involvement in the fire at the Stevens Funeral Home:

THE COURT:    In Count One reference is made to the

14

> Stevens Funeral Home.  Were you involved
> in any way in that?

[GARY WHITE]:  Yeah, I was.

THE COURT:  Was Thomas White involved in any way with
> that?

[GARY WHITE]:  No, sir.

THE COURT:  And so, did you go on -- did you have an
> agreement with him to set fire to
> anything other than the FEMA trailer?

[GARY WHITE]:  No, sir.

* * *

THE COURT:  Did you have an agreement with him to do
> anything with respect to Stevens Funeral
> Home?

[GARY WHITE]:  No, sir.

(# 102, Ex. A-1 and A-2).

Pursuant to his plea agreement, Gary was supposed to testify on behalf of the government at Defendant's trial; however, he refused.  Just prior to the start of trial, Assistant United States Attorney Anna Crawford offered the following explanation:

> MS. CRAWFORD:  There is one [issue], Your Honor.  I would at this time move in limine to preclude introduction into evidence any postarrest statements made by the coconspirator in this case, Gary White.  The basis for this motion is as follows:
>
> Late last week following Mr. White's guilty plea before this Court and following the holiday, myself, Steve Loew, Ed Weis, Gary White and the agents met at the South Central Regional Jail.  That was the first substantive debriefing that we had with Mr. White.  About twenty minutes into the debriefing, Mr. White just shut down and said he did not want to honor the plea agreement and he didn't want to cooperate and would not testify.

15

We -- the government left the room.  Ed Weis spoke with
his client for about five minutes and came out and
advised me that he did not think that his client was
going to change his mind in taking that position, and
also that he believed that his client, if compelled to
testify at trial, still would refuse to testify.  He told
me that he would give his client the weekend to think it
over, and on Monday morning called Steve Loew and
confirmed that the status hadn't changed on that.   I
spoke with Ed again yesterday.  He said it's the same
status.

So, he is not going to be available as a witness at
trial.  And I can't -- I can't think of any theory of
admission of his postarrest statements offered by the
defense in this case.  And for those reasons, I would
move in limine to preclude them from being introduced as
evidence and argued or stated in opening statement as
well.

THE COURT: Your response?

MR. JOHN TINNEY: Your Honor, this is the first I've heard
of the motion so I am thinking on my feet.  I don't
intend to attempt to introduce any evidence that would
violate the rules of evidence.  I don't intend to attempt
to elicit any statements that would violate the rules of
evidence.  I don't know that I agree with a blanket
motion in limine, but I think this is an issue that can
be resolved if it comes up at all.

(# 78 at 6-7).

Defendant now claims that his counsel should have called Gary

as a defense witness because he would have exonerated Defendant on

the arson charge concerning the funeral home fire.  (# 102 at 10).

Defendant claims that Gary's testimony "would have had great weight

in the assertion that Ke[i]ffer's testimony was not true."  (# 102

at 10-11).  Accordingly, Defendant claims that, had Gary testified,

the outcome of the proceedings would have been different.  (Id. at

11).

16

The United States contends that Gary's credibility "would have been a questionable commodity even if he had been willing to testify at defendant's trial." (# 106 at 9). The United States further contends that Gary's testimony would have implicated Defendant in aiding and abetting the burning of the FEMA trailer. (Id. at 9-10). For these reasons, the United States asserts that the decision not to call Gary as a defense witness at trial was "reasonable strategy that cannot be construed as defective representation." (Id. at 10).

In his Traverse, Defendant contends that his counsel never spoke to Gary and, thus, his investigation of Gary's potentially helpful testimony was deficient. Specifically, Defendant states:

> [Defendant's] counsel's performance fell below an "objective standard of reasonableness" because he failed to interview Gary White. Having never spoken with Gary, [Defendant's] counsel could not have fully assessed Gary White's version of the events, Gary's credibility and demeanor, or any other aspect of his involvement that might have reinforced [Defendant's] defense.

(# 107 at 5). Defendant further states:

> [Defendant] testified that he had no recollection of helping Gary White set the stairs of the Stevens Funeral Home on fire. (See Exhibit B attached to 2255 motion). Gary White was a critical witness to lend credibility to [Defendant's] story. Gary's testimony would have been "'consistent with [Defendant's] account' and would have created more equilibrium in the evidence presented to the jury." Luna v. Cambra, 306 F.3d 954, 061 (9th Cir. 2002), amended, 311 F.3d 928 (quoting Brown v. Myers, 137 F.3d 1154, 1157 (9th Cir. 1998)). Here, as in Brown, without any corroborating witnesses, [Defendant's] bare testimony left him without any effective defense." Brown, 137 F.3d at 1158 . . . .

17

(<u>Id.</u> at 6-7).   Accordingly, Defendant argues that there was a reasonable probability that, but for the failure to call Gary as a defense witness, the verdict would have been different.   (<u>Id.</u>) Defendant further asserts that, because Count Two of the indictment, concerning the FEMA trailer fire, had been dismissed against Defendant, there was no concern about Gary incriminating Defendant in that fire.   (<u>Id.</u> at 7-8).

The undersigned agrees that, had Gary White testified either for the government or for the defense, the credibility of his testimony would have been questionable, especially in light of the fact that he had not yet been sentenced at the time of Defendant's trial.   Since Gary was unwilling to testify for the government, it is unlikely that he would have waived his Fifth Amendment rights and testified on behalf of Defendant.

Furthermore, Gary's statements were completely contradicted by that of Elsie Keiffer, who was not charged with any criminal conduct.   Other than Defendant's self-serving testimony, there were no corroborating circumstances to support Gary's prior statements.

Rule 804(b)(3) of the Federal Rules of Evidence provides that, where a declarant is unavailable to testify, statements against the pecuniary or proprietary interest of the declarant, or which would tend to subject the declarant to civil or criminal liability, are not hearsay.   Fed. R. Evid. 804(b)(3).   However, the rule further provides that "[a] statement tending to expose the declarant to

criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Id. Presuming that Gary White would have refused to testify as a defense witness, his uncorroborated statements probably would not have been admissible under Rule 804(b)(3) of the Federal Rules of Evidence either.

Based upon the evidence of record, the undersigned proposes that the presiding District Judge **FIND** that there is no reasonable probability that Gary White's statements would have altered the outcome of Defendant's trial. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that Defendant has failed to demonstrate that Mr. Tinney provided ineffective assistance of counsel when he failed to interview Gary White, and failed to call Gary White as a defense witness at trial.

**B.    "Retroactive Misjoinder" and Cumulative Error.**

In his section 2255 motion, Defendant also asserts that the presentation of evidence concerning the FEMA trailer fire prejudiced the jury concerning the counts in the indictment upon which Defendant was convicted.  On this basis, Defendant asserts a claim of "retroactive misjoinder" which he describes as:

> where joinder of multiple counts were proper initially, but later developments -- such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions -- render the initial joinder improper. See generally, 8 James Wm. Moore, Moore's Federal Practice, Paragraph 8.06[3] (2d ed. 1993).  "To invoke retroactive

19

> misjoinder," a defendant "must show compelling
> prejudice." <u>United States v. Novod</u>, 927 F.2d 726, 728
> (2d Cir.) . . . .

(# 102 at 12).

The United States contends that Defendant is merely attempting
to re-litigate this claim, which was rejected by the trial court
and the Fourth Circuit.  The United States contends that
"collateral attacks cannot be made on the basis of issues litigated
and resolved on direct appeal."  (# 106 at 10-11)(citing
<u>Boeckenhaupt v. United States</u>, 537 F.2d 1182, 1183 (4th Cir. 1976).

> Defendant's Traverse states that he is

> not re-litigating the same issue raised on direct appeal.
> [Defendant] is building on said issue.  Although the
> issue by itself may not have been enough to gain a new
> trial, when it is added to the issues raised above a new
> trial is warranted.  <u>See</u> <u>Walker v. Engle</u>, 703 F.2d 959
> (6th Cir. 1983)(the cumulative effect of errors at the
> petitioner's trial deprived the petitioner of due
> process).

<u>Id.</u> at 968-69.  Thus, Defendant also asserts a claim of cumulative
error.  Defendant filed a Motion for a New Trial in which he
argued, <u>inter alia</u>:

> The government introduced testimony regarding the
> defendant's presence on the parking lot where the FEMA
> trailer was parked and his actions regarding the trailer
> and other property located on the lot.  Such evidence was
> irrelevant to the crimes charged in Counts I and III of
> the indictment and was unduly prejudicial to defendant.
> Defendant's Motion to Dismiss Count II of the Indictment
> should have been granted prior to jury selection and the
> United States should have been precluded from presenting

evidence to the jury regarding the FEMA trailer.[2]
(# 71 at 5).

The government's response to the Motion for a New Trial
contended:

> In essence, defendant seeks reversal of his convictions
> on the grounds that trial evidence relating to the FEMA
> trailer arson, in light of the dismissal of Count Two,
> was somehow "irrelevant" and "unduly prejudicial."
>
> * * *
>
> More importantly, the stated basis for this Court's
> Rule 29 dismissal of Count Two had nothing to do with the
> element of interstate commerce.  Thus, the real issue for
> the purposes of this motion seems to be nothing more than
> simple relevancy analysis concerning the jury's
> consideration of evidence related to the FEMA trailer.

(# 73 at 4, n.4).  The government further asserted that evidence
relating to the FEMA trailer fire was properly before the court and
could have been considered by the jury, whether Defendant was
charged with Count Two or not, because such facts were "part of the
res gestae of the events that took place that night" and was
"inextricably intertwined in time, place, and manner with
defendant's conspiracy to commit the arson of the funeral home."
(Id. at 5).

The presiding District Court agreed, and denied the Motion for

---

[2] In addition to his argument made during trial that there was
insufficient evidence to convict Defendant of the arson of the FEMA
trailer, which resulted in the dismissal of Count II, Defendant's
Motion for a New Trial argued that Count II should have been
dismissed because the government could not sufficiently prove the
interstate commerce nexus of the FEMA trailer.  Defendant made a
pre-trial motion concerning this issue, which was denied.

a New Trial, stating as follows:

The Thomas and Gary White events that took place on September 24, 2002, from midnight to the time of the Stevens Funeral Home fire around 4:30 a.m. constitute a continuum composed in sequence of the police car tire fire attempt, the FEMA trailer burglary and arson, and the Stevens Funeral Home fire. All of those events are part of the res gestae that embraces the offense of which Thomas White had been convicted. They together tell the story of the conspiracy in which Thomas and Gary White engaged, motivated, as they were, by revenge, to perform criminal acts that culminated in the Stevens Funeral Home fire. Those acts show their agreement to engage in the criminal conduct that is the subject of the offenses of conviction and in part reflect the knowledge of Thomas White of all that was about to take place in consummating the offenses of conviction.

Accordingly, the trailer burglary, as well as the arson that arose out of it, was inextricably intertwined in time, place, and manner with the defendant's role in the conspiracy to commit the arson of the funeral home, as well as his role in the commission of the substantive acts of arson of the funeral home.

Moreover, all of that evidence was not only relevant, reliable, and reasonably necessary to establish the essential elements of each of the offenses of conviction, its probative value substantially outweighed any prospect of undue prejudice arising from the admission of the evidence relating to the trailer arson of which the defendant, Thomas White, was not convicted by virtue of the Court's dismissal of the charges in that respect, and the trailer burglary of which he was not charged as an offense under the indictment.

Insasmuch as the evidence referred to was for the reasons noted appropriately admitted into evidence in the case, the Court denies the motion for new trial.

(# 80 at 425-426).

According to the unpublished opinion of the Fourth Circuit affirming Defendant's convictions and sentence on appeal, Defendant again raised the issue of undue prejudice stemming from the

22

admission of evidence concerning the FEMA trailer fire:

> Next, White asserts that the district court erred by denying his motion for a new trial following the jury's guilty verdict on the remaining counts of the indictment. White contends that the testimony and evidence concerning the arson of the trailer, for which he was granted a judgment of acquittal at the close of the government's evidence, was unduly prejudicial as to the counts for which the jury ultimately convicted him.

United States v. White, No. 03-4289, 74 Fed. Appx. 296, 298, 2003 WL 22113629 (4th Cir., Sept. 12, 2003)(unpublished)(# 96).  The Court found as follows:

> Here, Elsie Keffer, White's live-in girlfriend and the mother of his children, testified that she heard White and his cousin plan to burn the funeral home in revenge for what they perceived as the mishandling of the remains of a recently deceased relative by the funeral home.  Keffer stated that she watched as White siphoned gasoline out of a lawnmower and the cousins used the gasoline to set fire to the steps of the funeral home. White's neighbor testified that White expressed dismay at the condition of his deceased relative and remarked that the funeral home could have done a better job.  In light of the eyewitness testimony of White's participation in the arson and the supporting testimony concerning White's motive to commit the arson, we find that the district court did not abuse its discretion by denying the motion for a new trial.

(Id.)  Essentially, the Court found that the FEMA trailer evidence was not unfairly prejudicial.

The undersigned agrees with the United States that the essence of Defendant's claim of "retroactive misjoinder" was litigated and resolved in both his Motion for a New Trial and in his direct appeal.  Thus, Defendant is not entitled to collateral relief on that claim.  See Boeckenhaupt, 537 F.2d at 1183.

Moreover, in <u>Fisher v. Angelone</u>, 163 F.3d 835, 852 (4th Cir. 1998), the Fourth Circuit held that "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error . . . ." Thus, in order for a cumulative error analysis to apply, the court must first find that there have been actual constitutional errors.

Defendant's claim of cumulative error stems from claims which the court has previously found to be non-errors. Accordingly, the court proposes that the presiding District Judge **FIND** that Defendant was not denied a fair and impartial trial based on the cumulative effect of any alleged errors asserted by Defendant in his section 2255 motion.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 102), and dismiss this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this

Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, Thomas Ray White, and counsel of record.

March 4, 2005
Date

Mary E. Stanley
United States Magistrate Judge

25